**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

VIOLET A. ANDREWS,

                                        Plaintiff,

            - v -                                                    Civ. No. 7:10-CV-1202
                                                                            (RFT)[1]
MICHAEL J. ASTRUE, Commissioner of Social
Security,

                                        Defendant.

**APPEARANCES:**                                    **OF COUNSEL:**

OLINSKY LAW GROUP                          HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION         SIXTINA FERNANDEZ, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE, United States Magistrate Judge**

**MEMORANDUM-DECISION and ORDER**

        In this action, Plaintiff Violet Andrews moves, pursuant to 42 U.S.C. § 405(g), for review of

a decision by the Commissioner of Social Security denying her application for Disability Insurance

Benefits (DIB).[2]  Based upon the following discussion, the Commissioner's decision denying Social

---

[1] On February 15, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure
73, to have this Court exercise full jurisdiction over this matter.  Dkt. No. 17.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed
when appealing a denial of Social Security benefits.  Both parties have filed Briefs, though oral argument was not heard.
Dkt. Nos. 11 & 13.

Security benefits is **reversed** and this case is **remanded** back to the Social Security Administration (SSA) for further development of the record.

## I. BACKGROUND

Andrews, born on July 16, 1959, filed an application for DIB on February 24, 2009, claiming an inability to work as of October 31, 2008, due to degenerative disc disease of the lumbar spine, diabetes, high blood pressure, high cholesterol, and problems with her left hip, left leg, and neck.   Dkt. No. 9, Admin. Transcript [hereinafter "Tr."] at pp. 131-35 & 150.   Prior to that, Andrews had been employed as a personal care home assistant from 1983 to 2008.   *Id*. at p. 151.   The disability application was denied on initial review   *Id*. at pp. 74-79.   On September 17, 2009, a Hearing was held before Administrative Law Judge (ALJ) Joseph Davidson (Tr. at pp. 21-72), who, on November 4, 2009, issued an unfavorable decision finding Andrews was not disabled (Tr. at pp. 12-20).   On August 12, 2010, the Appeals Council concluded that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner.   *Id*. at pp. 1-5.   Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied.   *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).   Succinctly defined, substantial evidence is "more than

a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B.  Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 404.1520(b). If the claimant is not engaged

in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 404.1520(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and*

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a).

*Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).  In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills.  20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C.  ALJ Davidson's Findings

Andrews, as well as a vocational expert (VE), testified at the Hearing.  Tr. at pp. 21-72.  In addition to such testimony, the ALJ had Andrews's medical records consisting of treatment reports and opinions from various treating and/or examining physicians.  *Id.* at pp. 185-265.

Using the five-step disability evaluation, ALJ Davidson found that: 1) Andrews had not engaged in any substantial gainful activity since October 31, 2008, the alleged onset disability date; 2) she has severe medically determinable impairments, namely degenerative disc disease of the lumbar spine, diabetes, and obesity, but her other conditions, sixth nerve palsy and high blood pressure, were not severe; 3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) she retained the RFC to perform light work as defined in the Regulations, with the added limitation that she could alternate between sitting and standing at will; in light of this RFC, she could not perform her past relevant work as a home attendant; but, 5) considering her age, education, work experience, RFC, and the testimony of a VE, Plaintiff was capable of performing work that exists in significant numbers in the national economy, thus she was not disabled.  *Id.* at pp. 12-20.

In making his RFC assessment, the ALJ gave little weight to the medical opinions rendered by Margaret Linda Burke, M.D. (Andrews's treating physician), and Jerry Ginsburg, D.O. (state agency consultive examiner), and gave no weight to the RFC assessment produced by Allison John (state

agency disability analyst).  *Id*. at pp. 17-18.

Plaintiff contends that the ALJ's decision denying benefits should be reversed because the ALJ (1) erroneously determined her RFC as capable of performing light work; (2) failed to properly apply the treating physician rule and develop the record; and (3) improperly evaluated Plaintiff's credibility. *See generally* Pl.'s Br.  Plaintiff further expounds that because of these errors, the ALJ could not rely on the testimony of the VE to provide substantial evidence in meeting his burden at Step Five.

After reviewing the administrative transcript, the Court finds that the ALJ did not apply the correct legal standards, failed to fully develop the record, and his findings are not supported by substantial evidence of record.

## 1.  Residual Functional Capacity

The Regulations direct the Commissioner to assess a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments.  *See* 20 C.F.R. § 404.1545(a).  If the applicant can perform the kind of work he or she performed in the past, they are deemed not disabled.  *Id*. at § 404.1520(e).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  *Id*. at § 404.1545(a)(3).

ALJ Davidson determined that Plaintiff had the RFC to perform light work, as defined by the Regulations, with the added limitation that she could alternate between sitting and standing at will.  Tr. at pp. 15-18.  The Regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be

> very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

As noted above, in making this determination, the ALJ gave little weight to the opinions rendered by Dr. Burke, Plaintiff's treating physician, and Dr. Jerry Ginsberg, the state agency medical consultant, and he gave no weight to the RFC assessment completed by Allison John, a state agency disability analyst.  *Id*.  The ALJ's assessment of Dr. Burke's opinions was in violation of the well-established Treating Physician Rule.

The Regulations require an ALJ to give "controlling weight" to the opinion of a treating physician on the issue of the nature and severity of a claimant's impairment if that opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(d)(2); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  The Treating Physician Rule recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time nonexamining, non-treating physician.  20 C.F.R. § 404.1527(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

If the treating physician's opinion is not given controlling weight, the weight to be afforded to the opinion is to be based on several factors, which include: (1) the length, nature and extent of the treatment relationship, including the frequency of examination; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the medical opinion with the medical record as a

whole; (4) whether the treating physician is a specialist; and (5) any other relevant factors that tend to support or contradict the treating physician's opinion.  20 C.F.R. § 404.1527(d)(2) (cited in *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998)).

Dr. Burke, who has treated Plaintiff since December 31, 2003, provided two medical statements/opinions.  In the first statement, dated June 5, 2009, Dr. Burke provides a brief summary of Mrs. Andrews's medical history.  Tr. at p. 252.  Dr. Burke notes that Andrews strained her back in 2004 and was briefly out of work.  Following her return to work, Andrews experienced back pain and heart palpitations, at which point Dr. Burke recommended that Andrews remain out of work as a personal home care assistant.  *Id*. at pp. 252 & 253 (medical note, dated March 25, 2004, noting Andrews's attempt to return to work after injuring her back was unsuccessful and that she is advised to stay out of work because her back pain renders her unable to lift patients).  Dr. Burke noted that Andrews experiences pain in her back, left hip, and left leg and that she cannot walk for long distances nor sit for extended periods of time.  *Id*.  She also noted that her diabetes was not well controlled because she lacked health insurance which would allow her to regularly visit a doctor and take medication.  *Id*.  Dr. Burke opined that Andrews was permanently disabled.  *Id*.

The ALJ gave little weight to Dr. Burke's June 2009 assessment because it did not contain a function-by-function analysis and because she opined on an issue reserved to the Commissioner, namely a finding of disability.  *Id*. at p. 17 (citing, *inter alia*, 20 C.F.R. § 404.1527(d)).  We agree that Dr. Burke's June 2009 limited opinion is not well-supported to the extent it does not contain a function-by-function analysis nor identify the clinical findings and tests that support her statement.  And, we agree, she ultimately opines on an issue reserved to the Commissioner.  Nevertheless, as noted below, her June 2009 medical opinions are consistent with her other medical statements and other medical

evidence contained in the record.  Furthermore, while it is true that the ultimate decision of disability rests with the Commissioner, it does not follow that a treating physician's opinion with regard to the claimant's disability status is to be ignored outright.  "[A]djudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."  Social Security Ruling 96-5p, 1996 WL 374183, at *2-3, *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner* (S.S.A. 1996). While such opinion could not be given controlling weight, it may not be ignored and the adjudicator is "required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. . . . [and] determine the extent to which the opinion is supported by the record."  *Id.*

Dr. Burke's second medical statement, dated September 10, 2009, is more detailed and contains the function-by-function analysis lacking in her June Statement.  Tr. at pp. 255-62.  Dr. Burke lists various diagnoses including herniated disc in lower back with radiculopathy, Type II Diabetes, hypertension, hyperlipidemia, sixth nerve palsy (resolved after six months), anxiety, and reflux.  *Id.* at p. 255.  She reports that these conditions frequently cause symptoms such as pain, fatigue, and burning and numbness in the left leg, which Dr. Burke found were reasonably consistent symptoms associated with the above listed impairments.  *Id.* at pp. 256 & 260.  These symptoms persist all day, every day, and has, over time, affected Andrews mentally, causing depression and stress.  *Id.* at pp. 257 & 260-61. As to pain, Dr. Burke notes that Andrews suffers from leg burning and constant back pain, with occasional jabbing and sharp pain in the back.  *Id.* at p. 256.  She estimates the range of Andrews's level of pain to be a nine out of a scale of one to ten (with a rating of nine/ten representing "severe"). *Id.* at p. 257.  Walking and standing aggravate Andrews's pain and efforts to curb pain through

medication have failed.  *Id.*

As to functional limitations, Dr. Burke notes that Andrews could sit, stand, or walk for zero to one hours in an eight-hour work day and would need to get up and move around every thirty minutes. *Id.* at p. 257.  She estimates that Andrews would need to take at least sixteen unscheduled breaks throughout the eight-hour workday, with each break lasting approximately five to ten minutes.  *Id.* at p. 260.  Any prolonged sitting would put a strain on her back.  *Id.* at pp. 257 & 259.  She further opines that Andrews has significant limitations in lifting and bending and that she could frequently carry and/or lift objects weighing zero to five pounds, occasionally carry and/or lift objects weighing five to ten pounds, but could never carry and/or lift objects weighing more than ten pounds.  *Id.* at p. 258. Andrews was assessed to have moderate limitations (defined in the statement as "[s]ignificantly limited but not completely precluded) in using arms for reaching and grasping, turning, and twisting objects. *Id.* at pp. 258-59.  Other work related limitations included no pushing, pulling, kneeling, bending, nor stooping.  *Id.* at p. 261.  Dr. Burke notes that Andrews's symptoms of pain, fatigue, and burning in left leg would likely increase if she were placed in a competitive work environment and that she could not perform work activity on a sustained basis.  *Id.* at pp. 256 & 259-60.

Dr. Burke notes that she has been treating Plaintiff since December 31, 2003, the date Andrews initially injured her back while working as a home aid and that she has never perceived Andrews to be a malingerer.  *Id* at pp. 255 & 260.  In support of her diagnoses, Dr. Burke cites the following clinical findings: left leg burns, pain in back, both legs tire easily, gait abnormal, elevated blood sugars, and elevated blood pressures.  *Id.* at p. 255.  She further cites to the following laboratory and diagnostic test results: magnetic resonance imaging (MRI) completed in 2008, an ankle-brachial index test (ABI), and an electromyography test (EMG); the latter two tests are not in the record.  *Id.* at p. 256.

In reviewing Dr. Burke's September 2009 medical statement, the ALJ gave a terse summary before stating that he was according "very little weight" to her opinions because the "findings are not supported by any objective medical evidence" and because the reports referenced by Dr. Burke were "all at least one year old and have not been provided by counsel."  *Id*. at p. 18.  ALJ Davidson's treatment of Dr. Burke's opinions was erroneous.  The opinions rendered by Dr. Burke are not only internally consistent, but are further supported by, and not controverted by anything included in, the medical record.  Dr. Burke began treating Plaintiff after her work related fall in December 2003. Treatment notes throughout their treatment relationship establish that Andrews has had problems with obesity (she's 5'2" and her average weight is 199)[4] and with controlling her diabetes and cholesterol. This is also reflected in the many lab tests administered evincing high levels of glucose, total cholesterol, and hemoglobin.  *Id*. at pp. 208 (June 2007 admission to hospital with elevated hemoglobin levels and other complaints); 212 (December 2007 treatment note that blood sugar level elevated to 230);[5] 214 (treatment note, dated April 3, 2007, noting blood sugar levels not well controlled and lipids elevated); 217 (treatment note, dated June 12, 2007, noting several dates in June when Andrews's blood sugar levels were elevated following her June 1, 2007 admission to Cooper Hospital via ambulance for treatment of double vision);[6] 220-21 (August 2008 lab result showing high cholesterol and high

---

[4] With her height and weight, Andrews's body mass index is calculated at between 36 and 37, which falls under the category of obese as defined by the National Institute of Health (NIH).  *See* National Heart Lung and Blood Instituted (NHLBI) website, sponsored by the U.S. Department of Health and Human Services and the National Institutes of Health, *available at* http://www.nhlbi.nih.gov/health/public/heart/obesity/lose_wt/risk.htm (last visited August 15, 2012).

[5] To put this number into perspective, the American Diabetes Association (ADA) recommends that a target glucose level for non-pregnant diabetics is 70-130 prior to a meal and less than 180 after a meal.  *See* American Diabetes Association website, Section on Living with Diabetes, Blood Glucose Control, Checking Your Blood Glucose, *available at* http://www.diabetes.org/living-with-diabetes/treatment-and-care/blood-glucose-control/checking-your-blood-glucose.html (last visited August 15, 2012).

[6] A narrative from the Division of Neurology at Cooper University Hospital, dated June 26, 2007, reflects that Andrews had "sixth nerve palsy with diplopia" and left-sided weakness.  Tr. at p. 208.  According to the Merck Manual,
(continued...)

hemoglobin); 222-23 (April 2008 lab results showed elevated glucose level at 239 and total cholesterol at 283); & 224-25 (September 2007 lab results showed glucose at 164 and cholesterol at 265). During her testimony, Andrews explained, and this is also reflected in Dr. Burke's statement, that her sugar levels are elevated when she is stressed. *Id*. at pp. 48 & 50.

In spite of this, the ALJ stated that there was "no evidence of restrictions related to [Andrews's diabetes], nor did [Andrews] testify to any such limitation." *Id*. at p. 17. This is simply not true. As noted above, Andrews testified about her problems controlling her diabetes, that stress tends to elevate her blood sugar levels, and that her condition and symptoms cause her frustration and stress, though her stress has dissipated slightly without the pressure of performing work-related activities. This is also reflected in Dr. Burke's assessment wherein she also links diabetes as related to Plaintiff's pain. *Id*. at p. 257. Again, the ALJ erred in discounting Dr. Burke's assessment regarding limitations associated with Andrews's diabetes, which is not well-maintained, as supported by the objective and clinical medical evidence.

In her medical assessment, Dr. Burke also noted the problems Plaintiff was having with her back. This is supported by the examination conducted by Stuart Maslin, M.D., and David Clements, M.D., who each examined Plaintiff in the months following her fall, and each found that she had lumbar strain. *Id*. at pp. 187-90. Furthermore, the MRI conducted in 2004 revealed "moderate disc degeneration with a shallow left sided herniated disc at L5-S1." *Id*. at p. 189. Dr. Clements assessed that Andrews's accident aggravated her underlying lumbar degenerated discs. *Id*. As early as 2004,

---

[6](...continued)
sixth cranial nerve palsy is a "[w]eakness of the muscles innervated by the 6th (abducens) nerve. . . . [wherein] [t]he eye is turned inward; it moves outward sluggishly, reaching the midline at most." *The Merck Manual* 1457 (17th ed. 1999). It is most commonly found in elderly or diabetic patients. *Id*. As noted in the record, this condition was resolved within six months. Tr. at p. 255.

Dr. Burke felt that Plaintiff should remain out of work because of her various diagnoses and symptoms. *Id*. at p. 253. However, Plaintiff was eager to return to job that she enjoyed and had performed for over twenty-three years. *Id*. at p. 189. Plaintiff's insistence to return to work is more a testament to her work ethic, having worked at the same job for over twenty-three years. *See*, *e.g., id.* at p. 37 (noting that three months following her work accident she "forced [herself] to walk again"). Indeed, it is clear from the record that the job duties became so onerous and aggravated her symptoms that she simply could not perform the work any longer.[7] Andrews's testimony about her limited daily activity lends further support to the notion that she cannot perform sustained work activity. *Id*. at pp. 33-39.

Dr. Burke's assessments are also supported by the medical assessment rendered by Jerry Ginsburg, D.O., a state agency consultant, based on his examination of Plaintiff on May 8, 2009. *Id*. at pp. 235-44. Upon examination, Dr. Ginsburg noted that Andrews's reflexes were normal and she had a normal station, gait, and good coordination. *Id*. at p. 237. There was no evidence of any motor or sensory abnormality, nor was there any joint swelling or deformity. *Id*. Examination of her spine revealed moderate lumbar spine, paravertebral muscle spasm with no evidence of spinal deformity. Range of motion testing revealed limits with forward flexion and rotation of both hips as well as limits with her lumbar region. *Id*. at p. 242. Dr. Ginsburg opined that Andrews could occasionally lift and/or carry two to three pounds, stand and walk one to two hours, had no limitation with sitting, could occasionally bend, kneel, stoop, crouch, and balance, but never climb, and her ability to reach, handle,

---

[7] At one point in the Hearing, Andrews stated:
I get very agitated because I can't do the things that I did and it just brings back a lot of memories to me because I've always dealt in home care and that was my livelihood and that's what I enjoyed doing and I can't do that anymore. I can't sit anymore in an office and try to take care of – I – you feel like a failure, you know, when you get hurt. I'm supposing people would understand if they got hurt, you know, how you feel later down the road when it comes time that you can't do things anymore for yourself. It's a terrible feeling.
Tr. at p. 60.

*-13-*

push, and pull were limited by her conditions.  *Id.* at pp. 239-40.  He also identified some environmental restrictions due to her obesity.  *Id.* at p. 240.

The opinion of a state agency consultative examiner may constitute substantial evidence to support an ALJ's determination, provided that there is other supporting evidence in the record.  *See* 20 C.F.R. §§ 404.1527(f) & 416.927(f); *see also Brunson v. Barnhart*, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (noting that the opinions of non-examining sources may be considered provided they are supported by evidence in the record).  Yet, the ALJ accorded this opinion "little weight" because it was made without the benefit of reviewing the medical records and relies primarily on Andrews's subjective complaints and an examination that was essentially normal. Tr. at p. 18.  This statement is not entirely accurate.  The examination conducted by Dr. Ginsburg was not essentially normal as it indicated some significant limitations in Andrews's range of motion.  Furthermore, we cannot say for sure whether Dr. Ginsburg had access to the medical records when providing his opinion, but we can state that his functional assessment is strikingly similar to that provided by Dr. Burke, who had access to the medical records.

Another reason provided by the ALJ for discounting Dr. Burke's medical assessment is because the records she relied upon were over a year old and were not provided to him by counsel.  *Id.* at pp. 16 & 18.  This too was erroneous since the onus to develop the record at the administrative level is not entirely on a claimant.  In light of the remedial intent of the Social Security statute, and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty to develop the medical record if it is incomplete and this duty extends to all claimants, even those represented by counsel. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. § 404.1512(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the

12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary . . . ."). Pursuant to the Regulations, the ALJ must make "every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (quoting 20 C.F.R. § 404.1512(d)). The Regulations further state that, when the evidence received is inadequate for the ALJ to determine whether a claimant is disabled, the ALJ may re-contact the treating physician and request additional records. 20 C.F.R. § 404.1520(c); ); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (noting that when there is an inadequate medical record, the ALJ must *sua sponte* seek additional information). "Accordingly, an ALJ may not rely, as factfinders in adversarial proceedings customarily do, on the *absence* of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him." *Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 450 (S.D.N.Y. 2004) (emphasis in original) (internal quotation marks and citations omitted). In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination. 20 C.F.R. at § 404.1512(e).

During the ALJ Hearing, a discussion ensued regarding these absent records, the ABI and EMG, which Dr. Burke placed some reliance upon in rendering her medical opinion. After Andrews testified about the burning sensation she feels in her leg, the ALJ questioned her about the types of tests her doctors conducted, such as EMGs and MRIs. *Id.* at p. 30 ("[H]ave your doctors ever given you an EMG? . . . It's sort of used to check like [sic] nerves, that there might be nerves bother you, you know, because what you're describing sounds a little bit like that."). Andrews responded that such tests had been administered and should have been sent to Cooper Family Medicine, where Dr. Burke had been

treating her, yet, "[t]here was a problem trying to get [the] file from Cooper Family Medicine because [Dr. Burke] moved to [a competing hospital]." *Id*. at p. 31. Andrews further explained that Cooper couldn't transfer her files and was going to charge her $20 for ten pages; because her file was so "thick" she asked for them to give it to her, but they refused. *Id*. The ALJ asked Andrews's counsel[8] if any attempt had been made to obtain the file, to which counsel replied "I'm not sure because it was so far before onset. I don't know." *Id*. At the end of the Hearing, the ALJ announced he would close the record whereupon Andrews's counsel asked that it be kept open in order to give him time to obtain the missing records; the ALJ granted an extension of ten days. *Id*. at p. 71. According to the ALJ's written decision, "[t]he claimant's attorney failed to provide updated medical records from the claimant's treating physician, despite being given an additional 10 days after the hearing to submit additional records." *Id*. at pp. 16-17. And the absence of these records patently affected the weight accorded to Dr. Burke's September 2009 medical opinion. Yet, as noted above, the ALJ had the affirmative duty to seek these records, especially after being alerted to the monetary difficulty Plaintiff had in obtaining the records on her own. For the ALJ to then state that no evidence had been presented to him, and "simultaneously discount the medical opinion of [the claimant's] treating physician, violates [the ALJ's] duty to develop the factual record." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

After considerably discounting the two medical opinions in the record, the ALJ was left with one RFC assessment rendered by Allison John, the state agency disability analyst. Notably, the ALJ correctly did not accord any weight to Ms. John's opinion because she is not a physician. Yet, and what we believe is most troubling about the ALJ's decision, he discounts the two medical opinions contained in the record provided by physicians, which are consistent, and instead inserts his own lay

---

[8] At that time, Andrews was represented by Timothy Mello, Esq., from the Binder and Binder Law Firm. Tr. at pp. 21, 23, & 127-30.

opinion about Andrews's functional capabilities.  Interestingly, the ALJ's assessment is not dissimilar from the assessment rendered by Ms. John, who opined that Andrews could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk, and/or sit for six hours in an eight-hour workday, and had limitations in pushing and or pulling in the lower extremities due to pain; no other limitations were set.  *Id*. at pp. 245-51.  This RFC assessment provides that Andrews can engage in light work, just as the ALJ noted.  Yet, there is no support in the medical record for such an assessment, and the ALJ failed to point to what evidence supports his findings; he simply discounts the other medical opinions.  *See id*. at pp. 15-18.

In assessing Plaintiff's RFC, it is clear that the ALJ did not follow the proper legal principles and his finding is not supported by substantial evidence.  Furthermore, he failed to fully develop the record as, in this case, he was obligated to do.  Thus, his decision cannot be upheld.

### 2.  Plaintiff's Credibility

Plaintiff contends that the ALJ erred when he determined that her testimony was not entirely credible.  Pl.'s Br. at pp. 20-22.

Under 20 C.F.R. § 404.1529(a), subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  Symptoms such as pain are to be considered by the ALJ at all steps of the disability determination.  20 C.F.R. § 404.1529(a) & (d).  A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings.  *Id*. at § 404.1529(c)(4).  Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work.  *Id.* at § 404.1529(c).  "It is

well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence." *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)).  However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987).  Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence." *Id.* at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)).  In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

(i)     [The claimant's] daily activities;
(ii)    The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
(v)     Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
(vi)    Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)   Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In his decision, ALJ Davidson stated that Plaintiff's testimony concerning her symptoms and limitations were not entirely credibile.  Tr. at pp. 16-17.  In support of this finding, the ALJ provides two statements.  The first statement reads as follows:

*-18-*

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Id*. at p. 16.

In reviewing the record, as with the ALJ's RFC assessment, we find that substantial evidence does not support this credibility assessment.

Plaintiff complains of various symptoms, including pain, fatigue, and burning and numbness in the left leg.  She testified that she experiences pain all day and that it interferes with her sleep and prevents her from being comfortable at any point in the day.  She cannot stand or sit for more than fifteen minute intervals because of the pain and/or burning she feels in her leg and/or back.  During the ALJ Hearing, Plaintiff adjusted her seating position and was granted permission by the ALJ to stand while testifying, an offer she took full advantage of.  She further testified that she cannot sleep on her left side due to hip pain, and she only gets about three hours of uninterrupted sleep per night.  She has difficulty dressing herself, and the process usually takes about one-half hour.  She wears slip-on shoes because it is too difficult to bend down to put on other types of shoes.  She attempts to do the dishes and make dinner, but must alternate sitting and standing while performing these tasks.  She used to do the laundry, but she got very tired going up and down the stairs; the fatigue contributed to her falling four or five times on the stairs.  For this reason, she tries to limit the number of times she uses her stairs at home.  Other people in the household perform the household tasks, such as taking out the trash, vacuuming, and doing the laundry.  She tried to go shopping, but cannot walk the aisles.  She cannot walk more than one block before her leg starts to burn.  She has a driver's license, but hadn't driven in over a year; her husband drives her wherever she needs to go.  *See generally* Tr. at pp. 21-72

"One strong indication of the credibility of an individual's statements is their consistency, both

*-19-*

internally and with other information in the case record." S.S.R. 96-7p, 1996 WL 374186, at *5, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Clams: Assessing the Credibility of an Individual's Statements* (S.S.A. 1996).   Dr. Burke stated that throughout their treatment relationship, she has not known Plaintiff to be a malingerer.  *Id*. at p. 260.   And every physician Plaintiff has come in contact with has noted their positive impressions of her, referring to her as "delightful" and "very pleasant."  *Id*. at pp. 192, 208, & 233.  Furthermore, there is nothing in the record that refutes Plaintiff's testimony regarding her limited ability to do even the most basic work activities, and her treating physician concurred as to the limiting effects of Plaintiff's symptoms and that efforts to curtail Plaintiff's pain through medication have proven unsuccessful.  *Id*. at pp. 256 & 259.   As the Second Circuit has stated, "[p]ain itself may be so great as to merit a conclusion of disability where a medically ascertained impairment is found, even if the pain is not corroborated by objective medical findings.  *Rivera v. Schweiker*, 717 F.2d 719, 724 (2d Cir. 1983).

The ALJ acknowledged that Andrews's medically determinable impairments could reasonably cause the symptoms she reports.   Yet, the ALJ did not point to any medical evidence to sustain his manifestly unsupported presumption that Plaintiff is exaggerating her symptoms as well as the limiting effects her symptoms have on her ability to perform daily work activities.   Nor did the ALJ go through the appropriate factor analysis, noted above, in evaluating the persistence and intensity of Plaintiff's symptoms.   In essence, the ALJ discounted Plaintiff's credibility regarding the limiting effects of her symptoms simply because they do not comport with his own lay opinion of her RFC.

The second statement provided by the ALJ as to why he discounted her credibility is as follows:

Undermining the claimant's credibility is the fact that she has been collecting unemployment benefits since leaving work.   While an unemployed person might reasonably be expected to file claims for any form of income payments for which she may be eligible, a claim for unemployment insurance benefits (for which an individual

*-20-*

> must hold himself out as ready, willing, and able to accept employment if available), is
> obviously inconsistent with a claim for Disability Insurance Benefits (for which an
> individual must hold herself out as unable to perform any substantial gainful activity).

Tr. at p. 17.

In rendering this credibility assessment, the ALJ failed to take into account Plaintiff's twenty-three plus

years of good work history.  "A claimant with a good work record is entitled to substantial credibility

when claiming an inability to work because of a disability."  *Rivera v. Schweiker*, 717 F.2d at 725

(quoted in *Horan v. Astrue*, 350 F. App'x 483, 485 (2d Cir. 2009) (unreported decision)); *see also*

*Singletary v. Sec'y of Health, Educ. and Welfare*, 623 F.2d 217, 219 (2d Cir. 1980) (noting that the

claimant's prior work history "justifies the inference that when he stopped working he did so for the

reasons testified to"); *Tarsia v. Astrue*, 418 F. App'x 16, 2011 WL 1313699, at *2-3 (2d Cir. Apr. 7,

2011) (noting that despite the "special deference" courts give to an ALJ's credibility assessment, the

ALJ committed error when he failed to take into account the claimant's "extensive work history").  We

agree that the ALJ's failure to take into account Plaintiff's good work history in assessing her

credibility was in error.

As to receiving unemployment insurance, Plaintiff testified that while in New Jersey, she

collected unemployment insurance benefits, despite the fact that she was not actively searching for a

job.  In order to receive these benefits, she would simply go to a "job career link to receive a card."  Tr.

at p. 32.  It is not clear how long Plaintiff received unemployment insurance benefits.  While we

understand the financial difficulties facing Plaintiff after she stopped working, we cannot agree that by

accepting the unemployment insurance she wasn't technically asserting that she was ready and able to

work, notwithstanding her medical impairments.  And, we would agree that Andrews's collection of

unemployment insurance should have been considered in determining her credibility, yet it should not

be the determinative factor nor should it be used as a means of finding no disability.  *See Jackson v.*

*Astrue*, 2009 WL 3764221, at *8 (N.D.N.Y. Nov. 10, 2009) (citing cases) (noting the apparent inconsistency with holding yourself out as ready to work for unemployment insurance while simultaneously declaring, for social security disability insurance purposes, that you cannot work); *see also Plouffe v. Astrue*, 2011 WL 6010250, at *22 (D. Conn. Aug. 4, 2011) (quoting from an SSA Memorandum, dated August 9, 2010, for the proposition that "'[r]eceipt of unemployment benefits does not preclude the receipt of Social Security disability benefits[,]' but rather, 'is only one of the many factors that must be considered in determining whether the claimant is disabled.' . . . 'ALSs should look at the totality of the circumstances in determining the significance of the application for unemployment benefits and related efforts to obtain employment'").

Thus, while it was not complete error for the ALJ to consider Plaintiff's receipt of unemployment benefits in assessing her credibility, his failure to provide a proper analysis of her subjective complaints of pain and other symptoms, and the absence of substantial evidence supporting his finding, is further justification for not upholding the ALJ's disability determination.

### III. CONCLUSION

In light of the foregoing discussion, it is clear that in finding Andrews was not disabled, the ALJ failed to apply the correct legal standards and his factual findings are not supported by substantial evidence. Thus, this Court cannot uphold the ALJ's decision.

In determining the final disposition of this matter, the most equitable judgment must be implemented. The Court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("Where there are gaps in the administrative record, remand to the Commissioner

for further development of the evidence is in order.") (cited in *Rosa v. Callahan*, 168 F.3d at 82-83).

Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and

remand for further evidentiary development would not serve any purpose. *Parker v. Harris*, 626 F.2d

at 235; *see also Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) ("Where, however, the reversal 'is

based solely on the [Commissioner's] failure to sustain her burden of adducing evidence of the

claimant's capability of gainful employment and the [Commissioner's] finding that the claimant can

engage in sedentary work is not supported by substantial evidence, no purpose would be served by [the

court] remanding the case for rehearing." (citing *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998)

(alterations in original)); *Rosa v. Callahan*, 168 F.3d at 83 (remand solely for calculation of benefits

is warranted when the court has no "apparent basis to conclude that a more complete record might

support the Commissioner's decision"); *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d

Cir. 1992).

     "Upon a finding that an administrative record is incomplete or that an ALJ has applied an

improper legal standard, we generally . . . remand the matter to the Commissioner for further

consideration." *Curry v. Apfel*, 209 F.3d at 124 (citation omitted).  Accordingly, because the ALJ failed

to adequately develop the record in reaching a determination of Plaintiff's RFC, the Court need not –

indeed, cannot – reach the question of whether the Commissioner's determination at Step Five and

subsequent denial of benefits was based on substantial evidence.  Thus, the case should be remanded

to the Commissioner to further develop the record.  Upon remand, the SSA must contact Cooper Family

Medicine in order to obtain the tests relied upon by Dr. Burke.  The Court also directs that the ALJ

revisit the medical opinions in the record and, if controlling weight is still not given, must adequately

state reasons for according a different weight.  The same is true for assessing Plaintiff's credibility

regarding her symptoms and the effect such have on her ability to perform basic work activities.

   **WHEREFORE**, it is hereby

   **ORDERED**, that the Commissioner's decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent with the above; and it is further

   **ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Date: August 21, 2012
   Albany, New York

Randolph F. Treece
U.S. Magistrate Judge